## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD. and M.L.T. SOLAR ENERGY PRODUCT CO., LTD.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 25-00169 |

## **COMPLAINT**

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs, Trina Solar Science & Technology (Thailand) Ltd. ("TTL") and M.L.T. Solar Energy Product Co., Ltd. ("MLT"), by and through its counsel, allege and state as follows:

## **JURISDICTION**

1. Plaintiffs bring this action pursuant to, and in accordance with, section 516A(a)(2)(A)(i)(II) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. § 1516a(a)(2)(A)(i)(II), contesting the final determination issued by the U.S. Department of Commerce ("Commerce") in *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances*, 90 Fed. Reg. 17,380 (Dep't Commerce Apr. 25, 2025) ("Final Determination"), and accompanying Issues and Decision Memorandum (Apr. 18, 2025) ("IDM"); see also *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Countervailing Duty Orders*, 90 Fed. Reg. 26,791 (Dep't Commerce June 24, 2025).

This Court has jurisdiction over this matter under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## STANDING

2. Plaintiffs, Trina Solar Science & Technology (Thailand) Ltd. and M.L.T. Solar Energy Product Co., Ltd., are foreign producers and exporters of the merchandise examined in the countervailing duty proceeding that is contested here. Plaintiffs therefore are interested parties within the meaning of 19 U.S.C. § 1677(9)(A). As interested parties that actively participated in the underlying administrative proceeding, Plaintiffs have standing pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

3. The <u>Final Determination</u>, which is being challenged herein, was published in the Federal Register on April 25, 2025. <u>See</u> 90 Fed. Reg. 17,380. Following an affirmative injury determination by the U.S. International Trade Commission, Commerce published the countervailing duty order in the Federal Register on June 24, 2025. <u>See</u> 90 Fed. Reg. 26,791. On July 24, 2025 – within 30 days after the order was published in the Federal Register, Plaintiffs filed a summons to initiate this action. <u>See</u> ECF No. 1. Accordingly, this action was commenced within the period specified in 19 U.S.C. § 1516a(a)(2)(A)(ii). This Complaint is being filed within 30 days of the filing of the summons. Therefore, according to the provisions of 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(2) of the Rules of the U.S. Court of International Trade, this action has been timely brought.

## STANDARD OF REVIEW

4. This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1677j to determine whether they are "unsupported by substantial evidence on the

**Court No. 25-00169**

record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  Further, the Court may also review determinations to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(ii).

## PROCEDURAL HISTORY

5. On May 20, 2024, Commerce initiated a countervailing duty investigation against subject merchandise from Thailand based on the April 24, 2024, petition filed by the American Alliance for Solar Manufacturing Trade Committee ("petitioner").  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam:  Initiation of Countervailing Duty Investigations, 89 Fed. Reg. 43,816 (May 20, 2024).  Commerce's period of investigation ("POI") was January 1, 2023, through December 31, 2023.

6. On June 17, 2024, Commerce released its respondent selection memorandum stating that it had selected TTL as the sole mandatory respondent.  Although not selected as a mandatory respondent, MLT filed an entry of appearance and participated as an interested foreign producer and exporter of subject crystalline silicon photovoltaic ("CSPV") products.

7. On July 22, 2024, TTL submitted its Affiliation Questionnaire Response, explaining that it sourced wafers from Trina Solar Co., Ltd. ("TCZ") and Trina Solar (Suqian) Silicon Materials Co., Ltd. ("TSM (SQ)") during the POI.  See Response from Trade Pacific PLLC, "Affiliation Questionnaire Response," (July 22, 2024).

8. On August 12, 2024, the petitioner filed a New Subsidy Allegation ("NSA") against the cross-border provision of silicon wafers from China at less-than-adequate remuneration ("LTAR").  See Letter from Wiley Rein, "New Subsidy Allegations," (Aug. 12, 2024) ("Pet. NSA").

**Court No. 25-00169**

9. On August 19, 2024, TTL submitted its response to Section III of Commerce's initial countervailing duty questionnaire. See Response from Trade Pacific PLLC, "Section III Questionnaire Response," (Aug. 19, 2024). Therein, TTL provided a list of all wafer purchases during the POI, as well as the polysilicon purchase documents linking to the wafers produced and purchased for the three largest polysilicon purchase transactions. Id., at 36, 38–39, citing Exhibits 21 and 22. Those records demonstrated that 100 percent of the polysilicon used to produce the wafers purchased by TTL was produced outside of China. Id.

10. On August 26, 2024, the petitioner filed additional NSAs against the cross-border provision of Chinese silver paste and solar glass for LTAR. See Letter from Wiley Rein, "New Subsidy Allegations," (Aug. 26, 2024).

11. On September 20, 2024, Commerce initiated an investigation on Petitioner's NSA for the cross-border provision of Chinese silicon wafers for LTAR. See Commerce Memorandum, "Decision Memorandum on New Subsidy Allegation," (Sept. 20, 2024).

12. On October 4, 2024, Commerce published its Preliminary Determination in the Federal Register. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, Form Thailand: Preliminary Affirmative Countervailing Duty Determination, Preliminary Affirmative Critical Circumstances Determination, in Part, and Alignment of Final Determination with Final Antidumping Duty Determination, 89 Fed. Reg. 80,874 (Oct. 4, 2024) ("Preliminary Determination"); see also accompanying Issues and Decision Memorandum (Sept. 30, 2024) ("PDM"). Commerce calculated a preliminary weighted-average dumping margin of 0.14 percent for TTL. The calculated "All Others" rate applicable to MLT was 23.06 percent. In its Preliminary Determination, Commerce stated that it would address petitioner's NSAs in a post-preliminary analysis memorandum. PDM, at 4.

13. As a part of its Preliminary Determination, Commerce determined that critical circumstances existed for non-mandatory respondents, including MLT, after finding that the volume of imports from January 2024 to August 2024 were "massive," i.e., finding an increase by at least 15 percent from the base period to the comparison period. See Commerce Memorandum, "Critical Circumstances Analysis for All Other Producers and Exporters," (Sept. 30, 2024).

14. On October 24, 2024, TTL submitted rebuttal comments establishing that its affiliated suppliers had no involvement or role with the Chinese government in any capacity. See Letter from Trade Pacific PLLC, "Rebuttal Comments on Petitioner's Comments on TTL's Supplemental Affiliation Questionnaire," (Oct. 24, 2024).

15. On October 28, 2024, Commerce initiated an investigation into Petitioner's NSAs on the cross-border provision of Chinese silver paste and solar glass for LTAR. See Commerce Memorandum, "Decision Memorandum on New Subsidy Allegations Regarding the Provision of Solar Glass and Silver Paste for Less Than Adequate Remuneration," (Oct. 28, 2024).

16. On January 7, 2025, Commerce released its post-preliminary analysis memorandum in regard to the NSAs on the cross-border provisions of Chinse silicon wafers, silver paste, and solar glass for LTAR. See Commerce Memorandum, "Decision Memorandum for the Post-Preliminary Analysis in the Countervailing Duty Investigation of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Thailand," (Jan. 7, 2025) ("Prelim. Chinese Wafer Memo"). Commerce determined that each alleged LTAR program was countervailable, and that TTL benefited from such programs. In doing so, Commerce determined that TCZ and TSM (SQ), suppliers to TTL, were "Authorities," as defined by 19 U.S.C. § 1677(5)(B), that provided a financial contribution to TTL in the form of solar inputs for

**Court No. 25-00169**

LTAR.  Commerce further made a specificity finding as to each program based on Petitioner's NSA submissions.  Id., 9.  In selecting a benchmark to value silicon wafers under the cross-border provision for LTAR program, Commerce selected a tier-one benchmark using Thai import statistics under HTS code 3818.00, exclusive of Chinese data submitted by the Royal Thai Government ("RTG").  Id., at 12.  Commerce adjusted the benchmark by including added value-added taxes at the rate of seven percent and monthly inland freight expenses reported by TTL.  Id.  In selecting a benchmark to value silver paste and solar glass, Commerce selected a tier one benchmark using TTL's purchases.  Id., at 17–18.

17. From January 13 through January 16, 2025, Commerce conducted an on-site verification at TTL's facility in Rayong, Thailand.

18. On March 12, 2025, TTL submitted its affirmative case brief in response to issues raised in Commerce's Preliminary Determination.  See Brief from Trade Pacific PLLC, "Case Brief of Trina Solar Science & Technology (Thailand) Ltd." (Mar. 12, 2025).  Among other arguments raised regarding the legality of Commerce's findings on the cross-border provisions on Chinese inputs for LTAR, TTL argued that Commerce's should select a tier two benchmark for valuing silicon wafer at LTAR, and in doing so, should choose the BloombergNEF Solar Spot Price Index prices, which serve as the most product-specific information available on the record.  Id., at 37–48.  In addition, TTL argued that Commerce should initiate an investigation into whether producers in Malaysia benefited from the cross-border provision of Chinese wafer for LTAR.  Id., at 26–27.  Record evidence confirms other producers also benefitted from such a program, and Commerce is obliged to initiate on such subsidies pursuant to 19 C.F.R. § 351.311(b).  Id.  On March 20, 2025, TTL submitted a rebuttal brief arguing that Commerce should continue to use TTL's purchases of imported solar glass, which serve as a tier one

benchmark.  See Brief from Trade Pacific PLLC, "Rebuttal Case Brief of Trina Solar Science & Technology (Thailand) Ltd." (Mar. 20, 2025).

19.     On March 12, 2025, MLT similarly filed an affirmative case brief arguing that Commerce should reach a negative finding of critical circumstances.  See Brief from Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, "Case Brief of M.L.T. Solar Energy Product Company Limited," (Mar. 12, 2025).

20.     On April 25, 2025, Commerce published its Final Determination in the Federal Register.  90 Fed. Reg. 17,380.  TTL received a final subsidy rate of 263.74 percent, a nearly 2,000 percent increase from its preliminary determination rate.  This rate also served as the "All Others" rate applicable to MLT.  In the final determination, Commerce continued to find that TTL benefited from the cross-border provisions of Chinese silicon wafer, silver paste, and solar glass for LTAR, and that TTL's input suppliers, TCZ and TSM(SQ), were "Authorities" under 19 U.S.C. § 1677(5)(B).  See IDM, at 7.  Commerce found each program to be specific as a domestic subsidy pursuant to 19 U.S.C. § 1677(5A)(D).  Id.  Commerce made changes to its selection of benchmarks for valuing Chinese silicon wafer and solar glass at LTAR.  For silicon wafer, it selected a tier two benchmark of UN Comtrade world export data under HTS code 3818.00.  Id., at 51.  For solar glass, it similarly selected a two-tier benchmark by using UN Comtrade world export data under HTS code 7007.19.  Id., at 58.  Finally, Commerce declined to initiate an investigation into whether producers in Malaysia benefited from the cross-border provision of Chinese wafer for LTAR, asserting that it could not issue a decision based on a different proceeding.  Id., at 87.

21.     In the Final Determination, Commerce continued to reach an affirmative determination of critical circumstances, and extended its finding to TTL.  See id., at 17–20.  That

**Court No. 25-00169**

is, Commerce found critical circumstances to exist with respect to TTL, non-responsive companies, and all other producers and exporters not individually examined, including MLT. Id. Commerce declined to consider that the "massive" volume of solar cell imports directly tied to the growth of U.S. module production. Id.

22. In response to ministerial error comments filed by TTL, Commerce issued amended final results on May 30, 2025. See Commerce Memorandum, "Amended Final Determination Calculations for Trina Solar Science & Technology (Thailand) Ltd." (May 30, 2025). TTL's final subsidy rate was adjusted to 255.39 percent. See also Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Malaysia and Thailand: Amended Final Countervailing Duty Determinations, 90 Fed. Reg. 26,791 (June 24, 2025).

**ISSUES PRESENTED BY THE ACTION AND
PLAINTIFFS' STATEMENT OF CLAIMS**

23. In the following respects, and for other reasons apparent from the record of the administrative proceeding, Commerce's final determination in its countervailing duty investigation is unsupported by substantial evidence and otherwise not in accordance with law.

**COUNT ONE**

24. Paragraphs one through twenty-three are incorporated herein by reference.

25. Commerce's determination to countervail subsidies allegedly provided to TTL by the Government of China was not in accordance with law. 19 U.S.C. § 1671 contains no explicit grant of authority for Commerce to impose countervailing duties on subsidies allegedly provided by governments of more than a single country or to entities outside the territory of the same country that bestowed the alleged countervailable subsidy. 19 U.S.C. § 1671 precludes Commerce from imposing countervailing duties on "transnational" subsidies except where it

makes requisite findings under 19 U.S.C. § 1671(d) or (e), which it did not do here. Accordingly, Commerce's "transnational" subsidy finding was not in accordance with law.

## COUNT TWO

26. Paragraphs one through twenty-five are incorporated herein by reference.

27. Commerce's specificity finding for the cross-border provisions of Chinese wafer, silver paste, and solar glass for LTAR is not in accordance with the law. Commerce found such programs to be specific as domestic subsidies under 19 U.S.C. § 1677(5A)(D). Yet, the statute provides no legal basis for a specificity finding for transnational programs. As defined in § 1677(5A)(D), domestic subsidies must be provided "to an enterprise or industry within the jurisdiction of the authority providing the subsidy." The cross-border provisions of solar inputs for LTAR cannot be considered domestic subsidies, and Commerce's determination is therefore not in accordance with the law.

## COUNT THREE

28. Paragraphs one through twenty-seven are incorporated herein by reference.

29. Commerce's determination that TCZ and TSM(SQ) are "Authorities," controlled by the GOC and the Chinese Communist Party ("CCP") is not supported by substantial evidence. Commerce ignored detracting evidence establishing that TCZ's shareholders are not party members or officials of the CCP. Nothing on the record supports any finding that TCZ or TSM(SQ) are controlled or in any way involved with the CCP, and Commerce's determination is therefore unsupported by substantial evidence.

## COUNT FOUR

30. Paragraphs one through twenty-nine are incorporated herein by reference.

31. If Commerce's cross-border provision on Chinese silicon wafers for LTAR is

sustained – which is should not be for the reasons stated above – Commerce's tier two benchmark selection for valuing wafer for LTAR is unsupported by substantial evidence. In selecting global UN Comtrade data under a broad HTS code of 3818.00, Commerce erroneously determined that the Thai market for wafers was distorted and unreasonably declined to consider other sources on the record specific to solar wafer. Commerce's benchmark selection resulted in highly aberrational subsidy rate as applied to TTL, as indicated by the nearly 2,000 percent increase in its subsidy rate from the preliminary determination to the final determination. Commerce's benchmark selection is therefore unsupported by substantial evidence.

## COUNT FIVE

32.     Paragraphs one through thirty-one are incorporated herein by reference.

33.     Similarly, Commerce's benchmark selection for valuing solar glass for LTAR is unsupported by substantial evidence. The record contains viable tier-one benchmarks for valuing solar glass, including TTL's actual purchases, relied on by Commerce in the preliminary determination. Commerce's decision to ignore tier one benchmarks and instead select a more inaccurate, non-product specific benchmark in the final determination was unreasonable and is unsupported by substantial evidence.

## COUNT SIX

34.     Paragraphs one through thirty-three are incorporated herein by reference.

35.     Commerce's affirmative determination of critical circumstances as to all exporters and producers from Thailand was unsupported by substantial evidence. The record shows that the increase in shipments following the filing of the petition was entirely attributable to exports of solar cells in order to fuel U.S. module manufacturing, and Commerce unreasonably declined to consider such evidence. Commerce's affirmative critical circumstances finding is therefore

unsupported by substantial evidence.

## COUNT SEVEN

36.    Paragraphs one through thirty-five are incorporated herein by reference.

37.    Commerce's failure to initiate an investigation on whether producers in Malaysia benefited from the cross-border provision of Chinese wafer for LTAR was not in accordance with the law and amounts to an abuse of discretion. Under 19 C.F.R. § 351.311(b), the Secretary of Commerce is required to "examine the practice, subsidy, or subsidy program" when it "discovers a practice that appears to provide a countervailable subsidy with respect to the subject merchandise and the practice was not alleged or examined in the proceeding." Record evidence was submitted in this proceeding to establish that producers in Malaysia—the only country for which the cross-border provision of Chinese solar inputs for LTAR was not investigated—used the same sourcing patterns alleged against producers in all other proceedings. Commerce's disregard for the identical behavior and practices occurring with producers in Malaysia was unreasonable and its refusal to examine those practices amounts to an abuse of discretion.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

38.    For the reasons stated above, Plaintiffs respectfully request that the Court:

    (a)    enter judgment in Plaintiffs' favor;

    (b)    declare that with respect to the issues raised in this Complaint, Commerce's determination and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

    (c)    remand these matters to Commerce for redetermination consistent with the Court's opinion; and

    (d)    provide such other relief as the Court deems just and proper.

**Court No. 25-00169**

                    Respectfully submitted,

                    /s/ Jonathan M. Freed

                    Jonathan M. Freed
                    MacKensie R. Sugama

                    **TRADE PACIFIC PLLC**
                    700 Pennsylvania Avenue, SE, Suite 500
                    Washington, DC  20003
                    Tel:  (202) 223-3760
                    jfreed@tradepacificlaw.com

                    Counsel for Plaintiffs *Trina Solar Science & Technology (Thailand) Ltd. and M.L.T. Solar Energy Product Co., Ltd.*

Dated: August 25, 2025